**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL YOUNG,** ) | **CASE NO. 1:11CV0386** |
| ) | |
| Petitioner, ) | **JUDGE JAMES S. GWIN** |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **TERRY TIBBALS, WARDEN,** ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |

Petitioner, Michael Young ("Young"), challenges the constitutionality of his conviction in the case of *State v. Young*, Cuyahoga County Court of Common Pleas Case No. CR-515454. Young, *pro se,* filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on February 23, 2011. On July 5, 2011, Warden Terry Tibbals ("Respondent") filed his Answer/Return of Writ. (Doc. No. 8.) Young filed a Traverse on July 29, 2011. (Doc. No. 9.) On February 9, 2012, Respondent filed a Supplement to the Return of Writ.[1] (Doc. No 11.) For reasons set forth in detail below, it is recommended that Young's petition be denied.

### I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Young's conviction as follows:

> {¶ 2} Just after midnight, on August 20, 2008, appellant was at a multi-unit house on East 139th Street in Cleveland, Ohio. He and several other people were sitting on the steps in front of the house. Appellant walked off the porch and down the walk toward the street as Cleveland police officers from the Community Services Unit were patrolling the area in force. Officer Sean Dial testified that, upon seeing

---

[1]The Supplement was filed in response to this Court ordering Respondent to address Young's ineffective assistance claim based upon defense counsel's conduct at trial. (Doc. No. 10.) The Court also ordered Respondent to submit the trial transcript. *Id.*

the officers, appellant turned around and bounded up the porch steps two at a time. He was then observed trying to enter the house, but was prevented by the locked front door. Appellant then took something from his mouth, placed it on the window sill next to the door, and walked away.

{¶ 3} Officer Dial testified that the members of his unit immediately exited their vehicles and rushed the porch. They ordered those present to the ground and handcuffed them for officer safety. Jason Pulley, one of those present on the steps of the porch that night, testified that one officer went straight toward appellant. Lieutenant Gordon Holmes, a member of the Fourth District vice unit, recovered a moist, clear plastic bag containing 12.29 grams of crack cocaine.

{¶ 4} Appellant was arrested and charged with one count of drug possession, one count of drug trafficking, and one count of possession of criminal tools-approximately $70. Trial commenced on January 14, 2009 with the testimony of several officers and two of the individuals who were on the porch steps that night. Appellant's Crim.R. 29 motion made at the conclusion of the state's case was partially granted, and the judge dismissed the charge of possession of criminal tools. On January 20, 2009, the jury found appellant guilty of possession and trafficking. He was sentenced to seven years incarceration for each charge, to be served concurrently.

*State v. Young*, 2010 WL 2854239, at *1, ¶¶ 2-4, 2010-Ohio-3402 (8th Dist. Ohio Jul. 22, 2010).

## II. Procedural History

### A.     Conviction

In September, 2008, a Cuyahoga County Grand Jury charged Young with one count of possession of drugs in violation of Ohio Revised Code ("O.R.C.") § 2925.11(A), one count of drug trafficking in violation of O.R.C. § 2925.03(A)(2), and one count of possessing criminal tools in violation of O.R.C. § 2923.24(A). (Doc. No. 8-1, Exh. 1.)  Each count contained a forfeiture specification. *Id.* On January 20, 2009, a jury found Young guilty of the possession and trafficking charges.[2]  (Doc. No. 8-1, Exh. 3.)  Young was sentenced to a concurrent term of seven years incarceration. *Id.*

### B.     Direct Appeal

On February 3, 2009, Young, through counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"), raising three assignments of error:

---

[2] At the close of the State's case, the possession of criminal tools charge was dismissed by the court. (Doc. No. 8-1, Exh. 3.)

2

> 1. There was insufficient evidence to support the guilty verdicts for, and appellant's conviction was against the manifest weight of the evidence.
>
> 2. Appellant's constitutional rights were violated when officers seized and investigated appellant without reasonable suspicion.
>
> 3. Appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution and the trial court erred by not declaring a mistrial *sua sponte*.

(Doc. No. 8-1, Exhs. 4 & 5.) On November 4, 2009, and February 4, 2010, the state appellate court, *sua sponte*, ordered the trial court to clarify its sentencing entry. *Id*. at Exh. 7 & 8. The trial court complied on February 25, 2010. *Id*. at Exh. 9.

On July 22, 2010, the state appellate court affirmed Young's conviction, but remanded for resentencing, finding that the convictions for drug possession and drug trafficking were allied offenses. *Id*. at Exh. 10, ¶¶ 39-40.

On November 22, 2010, after the possession of drugs charge was merged with the trafficking conviction, a seven-year term of imprisonment was imposed. *Id*. at Exh. 11.

Meanwhile, on August 26, 2010, Young filed a timely *pro se* notice of appeal with the Ohio Supreme Court raising three propositions of law:

> 1. The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I, of the Ohio Constitution prohibits any goverment [sic] search and seizure, including a brief investigative stop, unless supported by an objective jurisdiction.
>
> 2. The Six [sic] Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee all criminal defendants the right to effective assistance of counsel.
>
> 3. The Fifth Amendment to the United States Constitution provides that "no person shall . . . be deprived of . . . liberty . . . without due process of law. . . ."

*Id*. at Exh. 12 & 13.  On December 1, 2010, the appeal was dismissed as not involving any substantial constitutional question. *Id*. at Exh. 15.

### C. Federal Habeas Petition

On February 15, 2011, Young filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: There was Insufficient Evidence to support the Guilty Verdict for, and Appellant's Conviction was against the Manifest weight of the Evidence.

3

>**GROUND TWO**: Appellant's Constitutional rights were violated when Officers seized and investigated Appellant without Reasonable Suspicion.
>
>**GROUND THREE**: Appellant received Ineffective Assistance of Counsel in Violation of Apellant [sic] Sixth Amendment Rights.

(Doc. No. 1.)

### III. Exhaustion and Procedural Default

#### A. Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

#### B. Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

4

grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule,(2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

### IV.  Review on the Merits
#### A.  Federal Habeas Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

6

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. App'x 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)). Federal habeas courts are limited

7

to guarding "against extreme malfunctions in the state criminal justice systems," and are "not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770, 786 (2011) (*quoting Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

### B. Sixth Amendment Standard

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

### V. Analysis

#### A. Ground One

In ground one, Young claims there was insufficient evidence to support the jury's verdict and that the verdict was against the manifest weight of the evidence. (Doc. No. 1 at 5-6.)

Manifest weight claims are not cognizable on federal habeas review.[4] *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio 2006). Therefore, Young's manifest weight argument will not be considered.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.; Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review).

The state appellate court, applying the *Jackson* standard, determined that there was sufficient evidence to support Young's conviction, as follows:

---

[4] As explained by the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Young's conviction was against the manifest weight of the evidence. *Id.*

{¶ 6} In appellant's first assigned error, he argues that there was insufficient evidence to support the guilty verdicts and his convictions were against the manifest weight of the evidence.

{¶ 7} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 486, 124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 8} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and sufficiency of the evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 156, 529 N.E.2d 1236.

{¶ 9} The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492; *Jackson v. Virginia*.

{¶ 10} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the factfinder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of facts were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.

{¶ 11} The United States Supreme Court recognized the distinction in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in *Tibbs v. Florida* that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, *i.e.*, invocation of the double jeopardy clause as a bar to relitigation. *Id*. at 43.

{¶ 12} Upon application of the standards enunciated in *Tibbs*, the court in *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The *Martin* court stated: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. at 720.

{¶ 13} Here, appellant was convicted of drug trafficking in violation of R.C. 2925.03(A)(2), and drug possession in violation of R.C. 2925.11(A). Appellant first argues that there is insufficient evidence to support a drug trafficking conviction.

{¶ 14} R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly* * * transport, deliver, prepare for distribution, or distribute a controlled substance, when the

offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Appellant argues that the evidence presented at trial, the nearly 13 grams of crack cocaine found on the window sill, was inadequate to convict appellant of drug trafficking.

{¶ 15} Appellant correctly points out that none of the accouterments associated with drug trafficking were found on him. The crack cocaine found was not individually packaged for resale, and appellant had no packaging materials, scales, or weapons.

{¶ 16} The discovery of these items is not dispositive of the issue. This court has previously held that sufficient evidence of drug trafficking existed based on "the large number of rocks in appellant's possession, large amount of cash on appellant, an unlikely explanation for carrying the cash, that appellant was better dressed than the others, and the behavior of appellant and the other men when they saw the marked police car." *State v. Bryant* (June 2, 1994), Cuyahoga App. No. 65614, *6. Bryant was observed in an area of high drug activity congregating on a corner with three or four other individuals. When the police officers stopped their car at the curb, the individuals began walking away in different directions. Bryant was observed discarding an item into a bush. Police recovered a plastic bag containing 33 rocks of crack cocaine and almost $200.

{¶ 17} Similarly, appellant was observed in an area of high drug activity late at night. When he noticed police officers in the area, he turned around, mounted the steps to the porch, and tried to enter the house. After failing to gain entry, he removed something from his mouth and discarded it. Detective Thomas Barnes of the Cleveland police department testified that, in his experience, drug dealers often carry their wares in their mouths. He also testified that the street value of the drugs found was between $1,000 to $1,200, which was far more than one would normally have for personal consumption.

{¶ 18} In *State v. Batin*, Stark App. No.2004-CA-00128, 2005-Ohio-36, the Fifth District held that "[t]he appellant's possession of a large amount of crack cocaine [13.45 grams], both cut and uncut, as well as his possession of a large sum of money [$432] permitted the jury to draw the logical inference that he was involved in the distribution of drugs. Likewise, the lack of any cocaine smoking paraphernalia on his person at the time of his arrest suggested that the drugs he possessed were not for personal use." *Id*. at ¶ 24.

{¶ 19} Similar to *Batin*, no drug paraphernalia was found on appellant, undercutting his argument that the drugs were for personal use. Det. Barnes testified that the quantity of crack recovered was not typical for personal use. We have held in several cases that police officers may testify to the nature and amount of drugs and its significance in drug trafficking. *See State v. Fellows* (May 22, 1997), Cuyahoga App. No. 70900, *citing State v. Crenshaw* (June 4, 1992), Cuyahoga App. No. 60671; *State v. Wilson* (Oct. 3, 1996), Cuyahoga App. No. 69751. Therefore, this evidence was properly before the jury and they could make reasonable inferences to conclude that appellant was involved in the transport of crack cocaine for sale. Viewing the evidence in a light most favorable to the state, as we must, appellant's conviction for drug trafficking is supported by sufficient evidence.

{¶ 20} Also based on this evidence, the jury did not clearly lose its way in convicting appellant of drug trafficking. The amount involved, as well as the testimony of Det. Barnes regarding the typical method of transportation, was a sufficient basis for the jury to find appellant guilty. The evidence in this case does not demonstrate that manifest injustice occurred when the jury found appellant guilty of drug trafficking.

*Young*, 2010-Ohio-3402 at *1-4, ¶¶ 6-20.

Young argues that because the evidence shows the crack was in several pieces in one plastic bag, and not broken down into a number of bags ready for sale, and because there was no other evidence indicative of drug trafficking, his conviction was not supported by sufficient evidence. (Doc. No. 9 at 4.) However, based upon this Court's review of the trial transcript, the state appellate court accurately summarized the evidence and correctly applied the law. (Tr. 93-94; 112-113.)

The elements of drug trafficking in Ohio are: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance; (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." O.R.C. § 2925.03(A)(2).

The state appellate court found that Young's actions at the time of his arrest were consistent with a person who was engaged in drug trafficking. Young acted evasively and tried to flee after noticing a passing patrol car. When he was unable to escape, the officers observed him remove a plastic bag from his mouth and place it on a window sill. The bag was later determined to contain 12.29 grams of crack cocaine. The area of the arrest was noted by police to be a high crime area. Police officers, experienced in the methods of drug trafficking, testified that drug dealers often hide contraband in their mouths. In addition, Young possessed no instruments associated with personal consumption and the arresting officer testified that the amount of crack cocaine was far more than one would normally have for personal use. Based upon this evidence, a jury could reasonably conclude that the crack cocaine in the plastic bag was, at the least, knowingly transported by Young and intended for sale. As such, this Court finds that the state appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Young's first ground for relief is without merit.

### B. Grounds Two and Three

In ground two, Young asserts that his constitutional rights were violated when he was seized without reasonable suspicion. (Doc. No. 1 at 7.) In ground three, he contends that

because defense counsel did not file a motion to suppress based upon his unlawful seizure, he was denied effective assistance of counsel. *Id*. at 10.  Young also asserts that counsel was ineffective based upon his alleged bad conduct during trial.  *Id*. at 9-10.  Respondent contends that ground one and the first part of ground two are defaulted.  (Doc. No. 8 at 13-23.) Alternatively, Respondent asserts that grounds two and three fail on the merits.  *Id*. at 19-23.

Addressing the procedural default of ground two, Ohio's contemporaneous objection rule is applicable.  A petitioner waives an alleged error when he fails to make a contemporaneous objection during trial at the time of the alleged error.  *Osborne v. Ohio,* 495, U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice.  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *see Stojetz v. Ishee*, 2006 WL 328155, Case No. 2:04CV263 at *12 (S.D. Ohio Feb. 10, 2006).

In the instant matter, defense counsel did not challenge the admissibility of Young's search and seizure prior to trial.  Accordingly, the first three elements of *Maupin* are satisfied by the imposition of Ohio's contemporaneous objection rule.  Before discussing the cause and prejudice element, however, the Court will address Respondent's argument that ground three is also defaulted.

Respondent also maintains that a portion of ground three has been procedurally defaulted as Young did not present his counsel's alleged ineffectiveness for failing to file a motion to suppress to the Ohio Supreme Court.  (Doc. No. 8 at 19.)  State prisoners must present each argument to the highest court in the state in which the petitioner was convicted in order to give the State a full and fair opportunity to rule on the claims.  *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. at 302–03; *Harris*, 794 F.2d at 1174.

Upon review of the record, Young did not raise ineffective assistance of counsel based upon the suppression issue with the Ohio Supreme Court, and, therefore, this claim is waived in

habeas.[5]  In order to proceed on the merits, Young must prove cause and prejudice or a fundamental miscarriage of justice to avoid default.  Young relies on *State v. Woolum*, 47 Ohio App.2d 313, 354 N.E.2d 712 (Ohio App. 1st Dist. 1976).  In *Woolum*, defense counsel neglected to file a motion to suppress evidence.  Woolum argued that the trial court erred in denying an oral motion to suppress evidence (marijuana taken from defendant's person) and that counsel was ineffective.  The *Woolum* Court, determining that there was no oral motion for suppression, only an objection by defense counsel, concluded that the trial court did not abuse its discretion in enforcing Ohio Crim. R. 12(B)(3).[6]  The Court noted that "to hold otherwise would be to flaunt the purpose of Crim.R. 12(B) and significantly dilute its operation."  Regarding the ineffective assistance of counsel claim, the *Woolum* Court held that "when an attorney, as here, neglects to file a motion to suppress evidence, which at least arguably could dispose of a criminal charge against his client, the client is deprived of the assistance of competent counsel which amounts to a denial of due process."  *Id*. at 316.  *Woolum*, however, is not clearly established Supreme Court precedent.  Young has not established cause and prejudice or a fundamental miscarriage of justice.

Furthermore, Young's claims regarding reasonable suspicion and counsel's failure to file a motion to dismiss fail on the merits.  The state appellate court, in a Sixth Amendment review, found there was neither a Fourth Amendment violation that would have necessitated a motion to

---

[5]Young did raise the ineffectiveness of counsel regarding the alleged bad conduct during trial in a full round to the state courts, and, therefore, the court will proceed to review this claim on the merits.

[6]At the time *Woolum* was decided, Ohio Crim.R. 12 stated:

(B) Pretrial motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised before trial * * *

 (3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained * * *.

*Woolum*, 47 Ohio App.2d 314-315.

14

suppress, nor ineffective assistance of counsel in failing to file such a motion, as follows:

> {¶ 23} Appellant next argues that he received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, and the trial court erred by not *sua sponte* declaring a mistrial.
>
> {¶ 24} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687-696, 104 S.Ct. 2052, 80 L.Ed.2d 674.
>
> {¶ 25} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164.
>
> {¶ 26} The Ohio Supreme Court held in *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, that, "'[w]hen considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. This standard is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 * * *."
>
> {¶ 27} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Cf. United States v. Morrison*, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981).' *Strickland, supra*, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland, supra*, at 694, 104 S.Ct. at 2068." *Bradley* at 142.
>
> {¶ 28} Appellant first argues that his retained counsel was ineffective because he failed to file a motion to suppress. The Ohio Supreme Court has "rejected claims of ineffective counsel when counsel failed to file or withdrew a suppression motion when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant." *State v. Nields*, 93 Ohio St.3d 6, 34, 2001-Ohio-1291, 752 N.E.2d 859. To establish ineffectiveness in this context, "a defendant must prove that there was a basis to suppress the evidence in question. In other words, the defendant must show that a motion to suppress would have had a reasonable probability of success." (Internal citations omitted.) *State v. Siders*, Gallia App. No. 07CA10, 2008-Ohio-2712, ¶ 11.
>
> {¶ 29} The evidence, as sifted through below, demonstrates that officers had a

reasonable suspicion of criminal activity to justify the seizure and investigation of appellant.

{¶ 30} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. The analysis for a search requires a two-step inquiry where probable cause is required and, if it exists, a search warrant must be obtained unless an exception applies. *State v. Moore*, 90 Ohio St.3d 47, 2002-Ohio-10, 734 N.E.2d 804. "If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Id.* at 49, *citing Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *AL Post 763 v. Ohio Liquor Control Comm.*, 82 Ohio St.3d 108, 111, 1998-Ohio-367, 694 N.E.2d 905.

{¶ 31} One common exception is the investigatory or Terry stop. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under Terry, a police officer may stop and investigate unusual behavior, even without probable cause to arrest, if he or she has sufficient evidence to reasonably conclude that criminal activity is afoot. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry* at 21. An investigatory stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *U.S. v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 32} "In determining the reasonableness of the officer's belief, courts examine the totality of the circumstances, including the following factors: (1) whether the location of the contact is an area of high crime or high drug activity, (2) the suspect's non-compliance with the officer's orders, (3) the time of the occurrence, (4) the officer's experience, (5) the lack of backup for the officer, (6) the contact's location away from the police cruiser, (7) whether the suspect is fleeing the officer or the scene, (8) any furtive movements by the suspect, (9) the precautionary measures taken by the officer, and (10) the suspected offense." (Internal citations omitted.) *State v. Stiles*, Ashtabula App. No.2002-A-0078, 2003-Ohio-5535, ¶ 17.

{¶ 33} In the present case, officers with considerable experience in narcotics investigations observed appellant change direction when he spotted the police. They further observed him try to gain entry to a house by putting his shoulder to the door as well as knocking on the door. They then observed him remove something from his mouth and discard it. Det. Barnes testified that in his experience drug dealers often keep drugs in their mouths. The incident occurred late at night in an area of high drug activity. Officers were in that area investigating complaints of drug trafficking, although none involved appellant or that specific location.

{¶ 34} Generally, simply being in a high drug activity area or walking away from police officers does not subject one to search or seizure. *State v. Williams*, Cuyahoga App. No. 92822, 2010-Ohio-901, ¶ 12-13, *citing State v. Fanning* (1990), 70 Ohio App.3d 648, 650, 591 N.E.2d 869. However, when this court has been faced with situations where police officers observed one suspected of drug activity walk away from officers and discard something, we have upheld investigatory stops. *See State v. Edwards* (1992), 80 Ohio App.3d 319, 322-323, 609 N.E.2d 200; *State v. White*, Cuyahoga App. No. 93109, 2010-Ohio-521, ¶ 18, ("attempting to hide something from the police in a high drug activity area is suspicious enough to investigate further * * *.").

{¶ 35} "[W]e presume that defense counsel was effective if defense counsel could

16

> reasonably have decided that the filing of a motion to suppress would have been a futile act." *State v. Jackson*, Cuyahoga App. No. 86542, 2006-Ohio-1938, ¶ 18, *citing State v. Edwards* (July 11, 1996), Cuyahoga App. No. 69077. That is the case here. The factors above are sufficient to conclude that a **properly submitted motion to suppress would not have changed the outcome of appellant's trial. Therefore, trial counsel was not constitutionally ineffective in this regard.**

*State v. Young*, 2010-Ohio-3402 at *4-6, ¶¶ 23-35 (emphasis added).

The state appellate court properly relied upon cases utilizing the federal *Terry* standard in upholding an articulable suspicion of criminal activity justifying an investigatory stop. Moreover, the state appellate court properly applied the *Strickland* standard, finding that defense counsel was not deficient as it would have been futile to file a suppression motion. Ground two is meritless as the state appellate court reasonably found that the investigatory stop was justified by an articulable suspicion of criminal activity and, therefore, filing a motion to suppress on that ground would have been futile.

Addressing the portion of ground three claiming ineffective assistance of counsel based upon bad conduct during trial, the Court finds it is also without merit. Specifically, Young contends that defense counsel made baseless blanket objections,[7] and infuriated the court when he failed to tell the court that his client was not present because he was running late. (Doc. No. 1 at 9-10.) Further, Young notes that the trial court found defense counsel to be in contempt of court during the trial. *Id.*

The state appellate court, applying the *Strickland* standard (as cited above in ¶¶ 26-27), found that even if counsel had been ineffective, there was no reasonable probability that the outcome would have been different:

> {¶ 36} Appellant next complains of his counsel's behavior at trial. Defense counsel did demonstrate some odd behavior. When appellant was missing the second morning of trial, the court asked defense counsel for appellant's whereabout. Counsel claimed that any conversation he had with his client was privileged and he could not, in good conscience, divulge anything his client had told him. This led the trial court to believe appellant had fled and precipitated a long colloquy between defense counsel and the court about the nature of attorney-client privilege. About an hour later, appellant arrived. During a recess, while the jury was outside the court room, the judge asked appellant to explain his absence. Appellant stated that he had overslept. The trial judge

---

[7]In a footnote, Respondent argues that this claim is procedurally defaulted as Young did not raise it with the Ohio Supreme Court.

17

> became exasperated at defense counsel for failing to relay this information, choosing instead to waste the court's time claiming the conversation was protected. Trial counsel was held in contempt and fined $250. Later, trial counsel's cell phone rang on two occasions; it was taken by the judge. The trial judge even went so far as to ask defense counsel if he was feeling alright after counsel objected to the state's admission of exhibits without any basis, claiming it was routine to object.
>
> {¶ 37} Appellant argues that this behavior abridged fundamental rights and the trial court should have sua sponte declared a mistrial. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. "Ultimately, a defendant is only entitled to a mistrial 'when the ends of justice so require and when a fair trial is no longer possible.'" *State v. Jackson*, Lucas App. No. L-07-1184, 2008-Ohio-1563, ¶ 42, *citing State v. Williams*, Hamilton App. Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 50, *citing State v. Brewster*, Hamilton App. Nos. C-030024 and C-030025, 2004-Ohio-2993.
>
> {¶ 38} While defense counsel's actions were unusual at certain points in the trial, he vigorously cross-examined witnesses, made cogent arguments on appellant's behalf, and presented evidence and witnesses rebutting the state's case. Defense counsel was not constitutionally ineffective. The behavior appellant complains of, such as defense counsel's cell phone going off and his failure to disclose appellant's whereabouts, did not diminish appellant's ability to receive a fair trial. Therefore, the trial court did not err by not *sua sponte* ordering a new trial.

*State v. Young*, 2010-Ohio-3402, at *6-7, ¶¶ 36-38.

The state appellate court reasonably applied *Strickland* to the record, finding that although defense counsel's conduct may have been unusual, counsel was not ineffective as he "vigorously cross-examined witnesses, made cogent arguments . . . and presented evidence and witnesses rebutting the state's case." The state appellate court concluded that defense counsel's alleged bad conduct did not "diminish" Young's ability to receive a fair trial.

This Court reviewed the transcript and agrees. Defense counsel acted appropriately and posed relevant challenges during jury *voir dire*, made a cogent opening statement and closing argument, and, in addition to cross examination of State witnesses, he offered rebuttal witnesses. Moreover, defense counsel's Rule 29 motion was partially granted when the possession of criminal tools charge was dismissed. As Respondent argues, defense counsel's alleged mental instability was never demonstrated or proven. The record does demonstrate that the trial court's patience was worn thin after defense counsel invoked attorney-client privilege when asked where his client was, and because his cell phone rang for a second time during the proceedings.

Additionally, the state court's admonishments of counsel took place outside of the presence of the jury. (Doc. Nos. 11-2 at 167, 175, 193, 215.) As the state appellate court reasonably concluded that this behavior did not result in an unfair trial, Young's ineffective assistance of counsel claim is without merit.

### V. Conclusion

For the foregoing reasons, it is recommended that Young's Petition be denied.

                                             s/ Greg White
                                             United States Magistrate Judge

Date: April 25, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**